**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 09-60228-CIV-SEITZ/O'SULLIVAN

MARK KROLL,

Plaintiff,

v.

AL LAMBERTI, in his official capacity as Sheriff of Broward County,

Defendant.
_______________________________/

**ORDER GRANTING SUMMARY JUDGMENT AND CLOSING CASE**

THIS MATTER is before the Court on the Defendant's Motion for Summary Judgment [DE-31]. This matter arises from injuries incurred by Plaintiff while incarcerated at the Broward County main jail. Plaintiff filed a three count Amended Complaint against Sheriff Al Lamberti in his official capacity alleging: (1) Defendant violated 42 U.S.C. § 1983 when Sheriff's deputies force fed Plaintiff his medication; (2) Defendant negligently hired, trained, and supervised his deputies; and (3) battery by the deputies. Because there is no evidence that Defendant had a custom or policy allowing the force feeding of medication, because there is no evidence of negligence, and because Plaintiff's battery claim against Defendant in his official capacity is barred by Florida Statute, section 768.28(9)(a), summary judgment is granted.

**I. Undisputed Facts**

Plaintiff was arrested on February 4, 2008 and incarcerated at the Broward County main jail until February 12, 2008. (Amended Complaint, ¶¶ 6-7.) Initially, Plaintiff was placed in the general population of the jail. On February 8, 2008, medical records indicate that Plaintiff was showing signs of substance abuse withdrawal. (DE-37-1 at 20:12-20.) Therefore, from February

8 through February 12, Plaintiff was housed in the jail's infirmary for detoxification. (DE-37-1 at 48:1-17; 49:23-49:18.) While incarcerated, Plaintiff suffered a broken hip.[1] (Amended Complaint ¶¶ 12, 17, 23, 26.) Thereafter, Plaintiff filed this action. Plaintiff's three count Amended Complaint is against Sheriff Al Lamberti in his official capacity. It does not name any other defendants. Count I of the Amended Complaint alleges that Defendant violated 42 U.S.C. § 1983 by violating Plaintiff's constitutional rights when Sheriff's deputies force fed Plaintiff his medication. Plaintiff alleges that the Sheriff's Office had an official policy or procedure that led to the force feeding of the medication.[2] Count II of the Amended Complaint alleges negligence by Defendant in hiring, training, and supervising its employees. Plaintiff alleges that Defendant breached its duty of care to Plaintiff when deputies physically assaulted him to force feed him

---

[1]Medical records indicate that Plaintiff broke the head of his left femur. (DE-53-1 at 24.)

[2]In his response to the Motion for Summary Judgment, Plaintiff argues that Count I of the Amended Complaint alleges more than just a claim regarding the delivery of medication to Plaintiff; he argues that Count I includes a claim for deliberate indifference to Plaintiff's obvious and urgent medical needs. *See* DE-53, p. 5. However, a careful reading of the Amended Complaint reveals that Plaintiff has not made such a claim. While the Amended Complaint does allege that Plaintiff's requests for medical attention were ignored, *see* Amended Complaint, ¶11, Count I specifically alleges that Defendant had a policy or procedure of force feeding medications and that Plaintiff suffered injuries as a result of that policy or procedure. It does not allege any policy or procedure regarding medical needs and it does not allege that Plaintiff suffered an injury as a result of deliberate indifference to Plaintiff's medical needs. Furthermore, the Court notes that Plaintiff has obtained new counsel, who appeared after the deadline for amending the pleadings, after discovery had closed, and after Defendant had filed its Motion for Summary Judgment. New counsel is bound by what prior counsel pled and may not attempt to re-plead or re-frame the pleadings at this late stage of the litigation.

medication he did not wish to take.[3] Count III alleges battery, claiming that while within the scope of their employment, Defendant's employees battered, touched, and struck Plaintiff.

*The Provision of Medical Services in the Broward County Main Jail*

At the time of Plaintiff's incarceration, Defendant had an existing contract with Correctional Health Services, Inc. n/k/a Armor Correctional Health Services, Inc. (Armor) to provide all "medical screenings . . . and comprehensive medical, mental health, dental and related health care" for inmates of the Broward County main jail. (DE-33-2 at 3; *see also* DE-33-1, ¶¶ 4-5.) Pursuant to the contract between Defendant and Armor, Armor was responsible for providing prescribed medications to inmates. (DE-33-2 at 13.) The contract explicitly states that "[t]he Sheriff shall neither have nor exercise control or direction over the methods by which [Armor] shall perform its work and functions other than as provided in this Agreement." (*Id.* at 43.) Furthermore, Defendant's written policies and procedures state that "[a]t **NO TIME** will non-medical staff handle or issue prescription medications. (emphasis in original) (DE-33-3 at 12; *see also* DE-33-1, ¶¶ 5-6.)

Dr. Campbell, one of Armor's physicians who treated Plaintiff, testified that deputies "absolutely never" distribute medication and that medication would include Ensure. (DE-37-1 at

---

[3]In response to Defendant's Motion, Plaintiff argues that Defendant had a non-delegable duty to provide reasonable care to ensure the health and safety of Plaintiff while he was incarcerated and that Defendant breached that duty. While Defendant may have a non-delegable duty regarding Plaintiff's care, Plaintiff's Amended Complaint does not allege that Defendant breached its duty to provide for the care, well-being and safety of its inmates based on Armor's actions or based on Defendant's choice of Armor as the health care provider for the Broward County main jail; it alleges common law negligence by Defendant in hiring, training, and supervising Broward County Sheriff's deputies in the administration of medication to inmates. Thus, this appears to be another attempt by Plaintiff to amend his complaint. As stated earlier, Plaintiff cannot amend his complaint at this point in time and may only rely on what he has actually pled in the Amended Complaint.

28:10-12; 47:13-20.) He also explained that if a patient refuses medication, the patient is counseled as to the consequences and then asked to sign a Refusal of Treatment Sheet. (*Id.* at 28:13-22.) Plaintiff never executed a Refusal of Treatment Sheet. (*Id.* at 28:23-25.)

*Plaintiff's Testimony*

Plaintiff's testimony indicates that he is unable to put together a cohesive time-line of the events that occurred during his incarceration. While he was incarcerated, Plaintiff was going through withdrawal because he stopped taking Xanax and Percocet. (DE-33-4 at 46:7-13.) As a result of his withdrawal, Plaintiff suffered from cramping, diarrhea, severe shakes, and hallucinations. (*Id.* at 46:14-18; 48:13-18;64:16-17.) Because of his hallucinations, Plaintiff was punching at the jail door. (*Id.* at 66:3-7.) Progress Notes taken by an Armor employee, Nurse Johnson, indicate that Plaintiff spent the entire shift on February 9 kicking his cell door. (DE-53-1 at 10.)

Plaintiff testified that, for three days, the same three deputies forced him to take medication that he did not want to take. (DE-33-4 at 75:15-18; 76:12-77:9.) However, Plaintiff never told the deputies or the medical staff that he did not want to take the medication. (*Id.* at 90-14-17.) The deputies forced Plaintiff to take the medication when one of them put his fist in Plaintiff's face and "said take these pills or we'll make you take it;" however, no one actually touched Plaintiff while trying to give him the medication and no one physically forced him to take the medication. (*Id.* at 75:19-23; 79:15-22; 157:4-9.)

As to the events leading up to his broken femur, Plaintiff also testified that four deputies let him out of his cell, surrounded him, waved night sticks at him,[4] and taunted him to drink a drink and called him "fagot." (*Id.* at 34:10-15; 97:17-98:13.) Plaintiff believes that the drink was an energy drink, possibly an Ensure, which he drank and soon thereafter he blacked out. (*Id.* at 98:8-10.) While blacked out, he felt a crunching. (*Id.*) However, Plaintiff has no recollection of any deputy hitting him with a night stick or a billy club. (*Id.* at 72:12-16.)

According to Plaintiff, when he awoke, he was on the floor of a cell in pain and he could not see out of one eye. (*Id.* at 70:1-3: 118:17-21.) On February 12, Plaintiff was taken for an X-ray, after which it was determined that his leg was broken, and he was then transported to Broward General Hospital for treatment. (*Id.* at 122:10-15.) Plaintiff alleges that 2 ½ or 3 days passed between the incident when he blacked out and when he was taken for X-rays. (*Id.* at 126:10-12.) During that time, he yelled for help and no one came, except one woman who gave him an Ativan and water. (*Id.* at 127:6-16.) Before Plaintiff left for the hospital, he heard deputies respond to a question about what was going on with Plaintiff by laughing and calling it "a mere case of fag bashing." (*Id.* at 72:4-8.)

*The Medical Records and Testimony*

From February 8 until his discharge on February 12, Plaintiff was incarcerated in the infirmary of the main jail because he showed symptoms of substance abuse withdrawal. (DE-37-1 at 48:1-17; 49:23-49:18.) Dr. Campbell's treating notes indicate that, while in the infirmary, Plaintiff was unsteady on his feet and had been falling. (*Id.* at 31:21-22.) As a result, Plaintiff

[4]Despite Plaintiff's testimony, in 2008 deputies at the Broward County main jail did not carry night sticks, billy clubs, or another similar weapon. (DE-5 at ¶ 4.)

sustained a laceration and mild swelling to the left eyebrow area, which was treated. (*Id.* at 31:22-24; DE-53-1 at 34.) The Progress Notes filled out by Armor personnel indicate that Plaintiff was seen numerous times, and at least twice a day starting on February 8, 2010. (DE-53-1 at 10-23.) The Progress Notes indicate that Plaintiff was disoriented, confused, or otherwise altered during much of his stay in the infirmary. (*Id.*) Plaintiff also had compromised speech and motor skills, he was not calm or cooperative with medical personnel, he had nystagmus, nausea, tremors, and ataxia, all of which indicated he was going through withdrawal. (DE-37-1 at 55:20-56:7.)

Progress Notes from February 10, 2008 at 8:30 a.m. indicate that an Armor employee was called to Plaintiff's cell where the employee found Plaintiff on the floor with blood on his face, legs, the walls, and the floor. (*Id.* at 15.) The Plaintiff had a small laceration over his eye which was treated and Plaintiff was given an Ensure. (*Id.*) Later that day, the same Armor employee saw Plaintiff again and Notes indicate that Plaintiff was confused, had bruised elbows, had a bruised and swollen toe and his left knee was painful and bruised. (*Id.*) Notes from February 11 indicate that Plaintiff denied he was in pain and stated "I feel fine and much better than before." (*Id.* at 17.) However, later that day he complained that his leg hurt. (*Id.* at 19.) The next day, February 12, Plaintiff continued to complain that his leg hurt and he was taken for X-rays. (*Id.* at 19-20.) The X-rays revealed a fractured femur. (DE-37-1 at 37:9-13.) Thereafter, on February 12 at approximately 2:15 in the afternoon, he was transferred to Broward General Hospital. (DE-53-1 at 24.)

**II. Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

### A. Defendant is Entitled to Summary Judgment on Count I, Plaintiff's § 1983 Claim

When a government official is sued in his official capacity, the plaintiff is actually suing the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) Under § 1983, a governmental entity may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Thus, in order to establish liability for a government official sued in his official capacity, a plaintiff must show that his constitutional rights were violated as a result of a custom or policy that resulted in deliberate indifference to his constitutional rights. *Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007). Furthermore,

> "[a] policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.1997). A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir.1986).

*Goebert*, 510 F.3d at 1332. Defendant moves for summary judgment on Count I of the Amended Complaint because there is no evidence that Defendant had a custom or policy to force feed inmates their medication.

Plaintiff has not presented any evidence establishing a custom or policy of force feeding inmates their medication. In fact, Defendant has established the existence of policies that do not allow deputies to administer medications; under current policies, all medications are

administered by Armor personnel. *See* DE-33-3 at 12; *see also* DE-33-1, ¶¶ 5-6. While Plaintiff points to policies that require deputies to accompany Armor personnel and provide security to the Armor personnel when medication is administered to inmates, Plaintiff cannot point to any policies that actually permit deputies to administer medications. In fact, the policies relied upon by Plaintiff specifically state that at "**NO TIME** will non-medical staff handle or issue prescription medications." While Plaintiff testified at his deposition that deputies "put their fist in my face and put gloves on and said take these pills or we'll make you take it," *see* DE-33-4, 75:21-23, such threats do not establish the existence of a custom or policy by which Defendant may be held liable under § 1983. In fact, Plaintiff has not produced a single piece of evidence that indicates that deputies were permitted to touch medications, let alone actually administer medications to inmates. Consequently, Plaintiff has failed to establish a custom or policy to force feed inmates their medication.

Further, any argument by Plaintiff that Armor was an agent of Defendant does not give rise to liability under § 1983. "A municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Therefore, even if Armor did force feed Plaintiff his medications, Defendant would not be liable under § 1983 based on a theory of respondeat superior. Accordingly, Defendant is entitled to summary judgment on Count I of the Amended Complaint.

**B. Defendant is Entitled to Summary Judgment on Count II, Plaintiff's Negligent Hiring, Training & Supervision Claim**

A claim for negligent hiring allows an injured party to recover damages against an employer for acts of an employee committed outside the scope and course of employment if the employer knew or should have known that the employee was a threat to others. *Magill v. Bartlett Towing, Inc.*, 35 So. 3d 1017, 1020 (Fla. 5th DCA 2010). Similarly, a claim for negligent supervision requires that, during the course of employment, the employer became aware or should have become aware of problems with an employee that indicated his unfitness for the job. *Department of Environmental Protection v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005). There is absolutely no record evidence that indicates that Defendant knew or should have known that any of his deputies were unfit for the job or a threat to others. Consequently, summary judgment is appropriate on Plaintiff's negligent hiring and negligent supervision claims.

There is also no evidence that Defendant negligently trained his deputies or knew of a need to train employees in the administration of medication. The Amended Complaint alleges that Defendant "breached the duty [to train] imposed by law and owing to Plaintiff, when the deputies physically assaulted [Plaintiff] when they forced [sic] fed him medication he did not wish to take." *See* Amended Complaint, ¶ 22. Despite Plaintiff's arguments in his response to the Motion for Summary Judgment, this is the only allegation in Count II of the Amended Complaint that alleges a breach of a duty. Thus, the only breach alleged relates to the deputies' administration of medication to inmates. However, the undisputed record evidence clearly indicates that the deputies were not permitted to administer medication. Thus, there is no

evidence to support a claim that Defendant negligently trained its employees in administering medication because employees were not permitted to administer medication and thus were not trained in it.[5] Consequently, summary judgment should be granted on Plaintiff's negligent training claim.

**C. Defendant is Entitled to Summary Judgment on Count III, Plaintiff's Battery Claim**

Under Florida Statute, section 768.28(9)(a), the:

> state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment **or** committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

(emphasis added). Thus, because the statue uses the disjunctive "or," a governmental entity would not be liable for its employees' actions that were either (1) outside the scope of their employment or (2) done in bad faith, maliciously, or with a willful and wanton disregard for human rights, safety or property. Defendant argues that it is entitled to summary judgment because the actions alleged by Plaintiff were outside the scope of the deputies' employment or were committed in bad faith or with malicious purpose.

Generally, batteries by employees are held to be outside the scope of an employee's employment and, therefore, cannot be the basis for the imposition of vicarious liability. *Special Olympics Florida, Inc. v. Showalter*, 6 So. 3d 662, 665 (Fla. 5th DCA 2009). Unless it can be

---

[5]In his reply brief, Defendant, in what appears to be an abundance of caution, addresses a failure to train claim brought pursuant to § 1983. However, Plaintiff's Amended Complaint does not allege a cause of action for failure to train in violation of § 1983. Even if it did allege such a claim, summary judgment would be appropriate because there is no evidence that Defendant "knew of a need to train and/or supervise in a particular area and . . . made a deliberate choice not to take any action." *See Lewis v. City of West Palm Beach, Florida*, 561 F.3d 1288, 1293 (11th Cir. 2009).

established that a battery occurred in furtherance of the employer's business, it is not within the scope of employment. *Id.* at 665-66. Generally, the determination of whether an employee's action is within his scope of employment is one for the jury. *M.V. by and through W.W. v. Gulf Ridge Council Boy Scouts of America, Inc.* 529 So. 2d 1248, 1249 (Fla. 2d DCA 1988) (citing *City of Miami v. Simpson*, 172 So. 2d 435 (Fla. 1965)). Plaintiff argues that the deputies were acting within the scope of their employment when they force fed Plaintiff the pills and the Ensure because it was part of their job to oversee Armor as medication was dispensed and to ensure that inmates swallowed the medication given. Furthermore, Plaintiff argues that the issue is one for the jury to decide. Even assuming that the deputies acted within the scope of their employment, as Plaintiff argues, the Defendant would still not be liable for Plaintiff's injuries if the deputies acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights.

Taking the allegations in the Amended Complaint and Plaintiff's testimony as true, the deputies' actions were in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights. Plaintiff testified that he was taunted and battered because of his sexual orientation and that he was told by that deputies that it was "a mere case of fag bashing." *See* DE-33-4 at 72:4-8. According to Plaintiff's testimony the four deputies chased him around with night sticks "while laughing and calling me fagot and derogatory terms." *See id.* at 81:13-17. The same four deputies surrounded him outside his cell, waved night sticks at him, taunted him, and called him "fagot." *See id.* at 34:10-15; 97:17-98:13. He was left him in a cell with no food and water for over two days. *See id.* at 59:8-13. The Florida Supreme Court, quoting the United States Supreme Court, has defined "malice" as "ill will against a person, but

in its legal sense it means a wrongful act, done intentionally, without just cause or excuse." *John B. Stetson University v. Hunt*, 102 So. 637, 639 (Fla. 1925) (quoting *Tinker v. Colwell*, 193 U.S. 473 (1904)); *see also Jarzynka v. St. Thomas University of Law*, 310 F. Supp. 2d 1256, 1265 (S.D. Fla. 2004). Clearly, the deputies' alleged actions demonstrate bad faith or malicious purpose because they were done intentionally and without just cause or excuse. Plaintiff's own testimony is that the deputies were taunting him and "fag bashing." Such behavior can only constitute intentional behavior and Plaintiff does not offer a just cause for the behavior. Consequently, Defendant cannot be liable under Florida Statute, section 768.28(9)(a) and Defendant should be granted summary judgment.

Accordingly, it is hereby

ORDERED that:

1. Defendant's Motion for Summary Judgment [DE-31] is GRANTED.
2. The Court will enter a separate final judgment.
3. This case is CLOSED

DONE and ORDERED in Miami, Florida, this 6th day of August, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record